**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BRENDA K. UNERFUSSER,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:05-CV-368-Y** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

<u>**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A.    STATEMENT OF THE CASE

Plaintiff Brenda K. Unerfusser brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act.  Unerfusser applied for disability insurance and SSI benefits in December 2002 (with a protective filing date of October 31, 2002), alleging that her disability commenced June 13, 2000.  (Tr. 102, 110, 552). She maintained her insured status at all times relevant to the Commissioner's decision.

After the Social Security Administration denied Unerfusser's application for benefits both initially and on reconsideration, Unerfusser requested a hearing before an administrative law judge (the "ALJ"), and ALJ James A. Wendland held a hearing on March 9, 2004 in Fort Worth, Texas. (Tr. 36-65). Unerfusser was represented by counsel. On April 26, 2004, the ALJ issued a decision that Unerfusser was not disabled and not entitled to disability or SSI benefits because she retained the residual functional capacity to perform a modified range of sedentary work.[1] (Tr. 20-28). The Appeals Council denied Unerfusser's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6).

B.      STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20

---

[1]      Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §§404.1567(a), 416.967(a).

C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible

3

mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.      ISSUE

        Is the residual functional capacity assessment supported by substantial evidence?

D.      ADMINISTRATIVE RECORD

        1.      Treatment History

        Unerfusser was struck by a truck as she was crossing a street on June 13, 2000. She was thrown to the pavement, landing on her left side and injuring her left knee, hip, arm and shoulder. (Tr. 206, 209). She does not contend that the ALJ failed to incorporate the work-related restrictions these injuries impose in his assessment of her residual functional capacity. Instead, she limits her complaints to the ALJ's consideration of the work-related impact of her migraine headaches.[2] Her migraine headaches began when she was a teenager, but allegedly worsened after her accident in June 2000.

        Unerfusser saw neurologist Larry Ridings, M.D., from December 1997 through at least 2000 for treatment and evaluation of chronic headaches. (Tr. 382-87). She advised Ridings that her

---

[2]  Migraines refer to an often familial symptom complex of periodic attacks of vascular headache, usually temporal and unilateral in onset, commonly associated with irritability, nausea, vomiting, constipation or diarrhea, and often photophobia. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1117 (29th ed. 2000).

migraine headache symptoms began in junior high school, were usually concentrated on the right side of her head, and were accompanied by vision disturbances, nausea, occasional vomiting, and tingling in her left arm.  She reported that she might remain pain-free for months, then begin a cycle of headaches that occurred every few days.  (Tr. 385).  During her initial evaluation with Ridings in 1997, she stated that she was usually able to continue working with her headache, although she would prefer to sleep.  During a follow-up visit in January 2000, approximately six months before her alleged onset date, Unerfusser reported that her headaches were now alternating sides, with each side of her head affected with about the same frequency.  She was averaging one to four headaches per month.  Sometimes her headaches were preceded by spots that appeared in her vision, which alerted her to take her medication.  She noted that her headaches tended to be more frequent when her stress level was higher.  Unerfusser indicated that her medications were effective, and reported that she remained fairly functional and hardly ever missed work.  (Tr. 383).  Ridings concluded that Unerfusser's symptoms were well-controlled on her current regimen, but he added a prescription for Elavil because Unerfusser complained of insomnia.  (Tr. 384).

On December 1, 2000, Unerfusser advised Ridings that she was having headaches twice a week on average with her headaches lasting up to one week in duration, although the severity fluctuated.  (Tr. 382).  Unerfusser reported being stressed recently because of her worker's compensation injury, and she was also caring for her one-year-old grandson and sleeping poorly.  Her overall mood was considered good, and she did not appear particularly anxious during the evaluation.  She demonstrated no cranial nerve, motor, or sensory impairment.  Ridings observed normal coordination and gait.  Ridings assessed a chronic common migraine syndrome with a

5

tendency to cluster, (Tr. 382), and prescribed a trial dose of Petadolex.  He noted that Unerfusser could need periodic intravenous pain control, and referred her to the local emergency room or her primary care physician if she needed that type of care.  (Tr. 382).

Stephen Cordas, D.O., examined Unerfusser in September 2000 to assess her recovery after the accident.  He determined that she had not yet reached maximum medical improvement, and recommended additional diagnostic tests and treatment for left-sided pain.  (Tr. 391).  Six months later, Cordas found that Unerfusser had reached maximum medical improvement as of March 26, 2001.  He assigned a 12% impairment rating, but opined that Unerfusser's chronic pain syndrome required ongoing care and restricted her ability to perform jobs that required standing, climbing, squatting, pushing, pulling, and fine motor dexterity with her left hand.  (Tr. 410-12).  On January 14, 2002, Cordas reiterated that Unerfusser's functional capacity evaluation was consistent with a weak left-handed grip and generalized body pain that resulted in an inability to squat, perform back or high-near lifting, or perform repetitive tasking.  (Tr. 167-68).

On November 16, 2001, Unerfusser's headache medications were refilled.  (Tr. 302).  Her primary care physician referred her to neurologist Sreekumaran Nair, M.D., for evaluation of her headaches.  Nair examined Unerfusser on December 20, 2001.   (Tr. 424). At the evaluation, Unerfusser reported that she had a headache that had persisted for four days and was not responding to her medications.  She described her headaches as moderately severe, and noted that they occurred more frequently and were more severe after her accident in June 2000.  A neurological assessment was unremarkable.  Nair assessed severe migraine headaches with a possible combination of tension headaches.  (Tr. 425).  He recommended that Unerfusser undergo magnetic resonance imaging (an

6

MRI) of her brain to rule out lesions. Because Unerfusser was reportedly somewhat resistant to most medications she had tried, Nair recommended that she cease or decrease her use of her current medications. He prescribed a new medication for tension headaches, and also gave her a trial dose of a new migraine medication. (Tr. 425).

In September and October 2002, Unerfusser complained of headaches with pain that had required her to go to the emergency. (Tr. 431). She went to the emergency room again in January 2003, for injections of pain relievers and anti-nausea medication. (Tr. 524-25). In March 2003, Unerfusser reported to her primary care physician that she was doing well, with a decrease in her migraines, but went to the emergency room in April for a migraine headache that had persisted for two weeks. (Tr. 332, 360, 522). Unerfusser went to the emergency room on May 13, 2003 for a migraine headache triggered by the odor of hot asphalt. (Tr. 520). She was treated and released, but returned on May 22, 2003, complaining of a migraine that had persisted for a week and was accompanied by nausea, vomiting, and photophobia. (Tr. 518). In July and three additional occasions in August 2003, Unerfusser sought treatment at the local emergency room for her migraines. (Tr. 488-505). She also went to the emergency room in November 2003 and twice in December 2003 because of persistent and severe headaches, and was given pain medication and medication to alleviate her nausea. (Tr. 482-87). On January 8, 2004, Unerfusser went to the emergency room complaining of a migraine for the past week, with nausea, vomiting, and photophobia. (Tr. 480). She was released after receiving an injection of pain medication to relieve her symptoms.

2.      Administrative Hearing

Born May 22, 1949, Unerfusser was fifty-one years old on her alleged onset date. (Tr. 102). She completed high school, and had worked as an accounting clerk and administrative clerk until the date of her accident. (Tr. 112, 124).

Unerfusser testified that her physician had imposed a ten-pound lifting restriction. She testified that she was in pain after standing fifteen to thirty minutes, and also complained of constant pain in her left hip. (Tr. 51-52). Unerfusser testified that her ability to walk was limited. Walking more than fifteen minutes was painful, and after thirty minutes of walking, she had to sit down and rest. Her ability to sit was also limited. She testified that she started squirming and needed to stand at least briefly after sitting for thirty minutes. (Tr .41-42). She complained of pain and weakness in her left knee and hip, and pain from her neck that radiated into her left arm and hand. Unerfusser testified that she had reduced dexterity in her left hand, limited range of motion in her left arm, and was unable to carry any weight with her left arm. She also difficulty turning her head to the left. (Tr. 42).

Unerfusser testified that she had experienced migraines since the age of thirteen. Her headaches varied in frequency, but had become more severe after her accident. (Tr. 43). She used pain medication for her headache, but noted that she was allergic to many of the newer headache medications. She was also taking medication for anxiety and depression, and testified that the medication seemed to help her symptoms. (Tr. 44).

Unerfusser testified that she lived with her mother, her son, and two of her grandchildren. She performed her range-of-motion exercises daily and also worked on her computer, but had trouble using her left arm to operate the computer. She occasionally helped fold laundry or prepare

meals, and watched her three-year-old grandson. (Tr. 45). Unerfusser complained of being more irritable. She attended church and occasionally went out to eat, but shopped on only rare occasions because of her walking limitations. Unerfusser testified that she did not drive, and never had. She read, but used a platform to support her book. She also watched television. (Tr. 46). Unerfusser testified that she had an excellent memory before her accident, but now had problems with her memory, even for simple tasks that she had done for years. (Tr. 52-53).

Vocational expert Todd Harden testified that work as accounting clerk was a skilled job requiring sedentary exertion. Work as an administrative clerk was considered semiskilled work that required light exertion. (Tr. 54). The ALJ asked Harden to consider a variety of hypothetical situations, including a hypothetical worker of Unerfusser's age, education and work experiences who was able to perform sedentary work with the following limitations: not required to stoop, balance, crouch, crawl, kneel or climb stairs and ramps more than occasionally; not required to climb scaffolds, ladders, and ropes; not required to lift with the left, non-dominant,[3] upper extremity; not required to sit for more than thirty minutes at one time without the opportunity to stand, in addition to lunch and normal work breaks during the day; not required to walk for more than thirty minutes at one time without the opportunity to sit; not required to work above shoulder-level with the upper left extremity; not required to push, pull, or perform extended reaching more than occasionally, and not required to push or pull with the feet; not required to handle or finger objects with the left upper extremity more than occasionally; not required to understand, remember and carry out more than detailed instructions; and not required to do repetitive up-and-down or side-to-

---

[3] Unerfusser is right-handed. (Tr. 55).

side neck movements.  (Tr. 56-58).

Although these restrictions would rule out Unerfusser's past relevant work, the vocational expert identified several sedentary jobs to which Unerfusser's work skills would transfer:  night auditor (with approximately 35,000 jobs nationally and 2,800 in Texas), appointment clerk (with 40,000 jobs nationally and 3,200 in Texas), and customer complaint clerk (with approximately 30,000 jobs nationwide and 2,500 in Texas).  (Tr. 58).  Unerfusser's transferable work skills included bookkeeping, oral communication, and general clerical skills.  (Tr. 59).  In response to questioning from Unerfusser's attorney, Harden indicated that the limitations in squatting, lifting and repetitive tasking identified in Cordis's reports would not affect the jobs he had identified; however, a person requiring rest breaks of ten to fifteen minutes every hour would preclude any competitive employment.  (Tr.  63-64).

3.      ALJ Decision

The ALJ found that Unerfusser had not engaged in substantial gainful activity since June 13, 2000. (Tr. 26).  The ALJ found that Unerfusser had multiple severe impairments, including bulging disks in her cervical spine, with left-sided radiculopathy; left shoulder impingement syndrome with degenerative changes; degenerative changes, chondromalacia, and soft tissue injury in the left knee; low back pain; and status post ileostomy and colostomy.  The ALJ also noted Unerfusser's history of migraine headaches and hypertension.   (Tr. 26).  The ALJ found that Unerfusser had no severe mental impairment despite some depressive symptoms, but determined that her chronic pain did result in some work-related mental limitations.  (Tr. 23-24).  He found that she had no impairment or combination of impairments listed in or equal in severity to an impairment found in the Listing

of Impairments.  (Tr. 26).

The ALJ assessed a residual functional capacity for sedentary work with the following restrictions: Unerfusser cannot stoop, balance, crouch, crawl, kneel, or climb stairs or ramps more than occasionally; she cannot climb scaffolds, ladders or ropes; she cannot lift with her left upper extremity; she cannot sit for more than thirty minutes at a time without the opportunity to stand; she cannot walk for more than thirty minutes without the opportunity to sit; she cannot work above shoulder-level with her left upper extremity; she cannot push, pull, or perform extended reaching more than occasionally; she cannot push or pull with the feet; she cannot handle or finger objects with the left upper extremity more than occasionally; she cannot do repetitive up-and-down or side-to-side neck movements; and she cannot understand, remember, and carry out more than detailed instructions.  (Tr. 27).  Based on Unerfusser's age, education, and transferable work skills, as well as the vocational expert's testimony, the ALJ found that there were a significant number of jobs available in the national economy that Unerfusser could perform.  (Tr. 27).  Accordingly, the ALJ concluded that Unerfusser was not disabled and was ineligible for disability insurance or SSI benefits.  (Tr. 28).

D.     DISCUSSION

Unerfusser contends that the ALJ's assessment of her residual functional capacity is not supported by substantial evidence because it does not incorporate functional limitations attributable to her chronic migraine headaches.  She also disputes the accuracy of some of the statements about her headaches that are included in the ALJ's decision.

Unerfusser complains that it was contradictory of the ALJ to include her migraines in

11

identifying her impairments, but than fail to include any limitations resulting from her migraines in his assessment of her residual functional capacity.  The ALJ's assessment is extensive and detailed. The ALJ imposed a variety of physical restrictions, but also noted that Unerfusser experienced a certain amount of pain on a constant basis, which restricted her ability to perform basic work-related mental activities and precluded her from understanding, remembering, or carrying out more than detailed instructions.  (Tr. 24).  Unerfusser does not identify any additional limitations that her headaches impose that were omitted from the ALJ's assessment or were not adequately accommodated by a consideration of her constant pain, regardless of the source of the pain.

As for Unerfusser's complaints about inaccuracies in the ALJ's determination, her complaints involve the ALJ's statements that Unerfusser seeks occasional emergency room care, that her headaches are under fair control with medication, and that she reads, uses a computer, and cares for her grandchild despite her headaches.  The court finds that most of the statements Unerfusser complains of appear to be reasonable deductions from the medical record and Unerfusser's subjective reports, but to the extent the ALJ has overstated or misstated some facts, the court finds that Unerfusser has failed to show harm that would justify reversing the Commissioner's decision. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)(declining to address claimant's argument because, even if there were error in ALJ's decision, it was harmless); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)(court will not vacate administrative decision unless substantial rights have been affected).  Substantial evidence supports the ALJ's assessment of Unerfusser's residual functional capacity, and the ultimate determination that she is not disabled as that term is defined for purposes of Title II or Title XVI of the Social Security Act.

RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
 FINDINGS, CONCLUSIONS AND RECOMMENDATION
  AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 27, 2006. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 27, 2006 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the

13

opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JUNE  5 , 2006.


  /s/ Charles Bleil                                   
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

14